IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JAMES SULLIVAN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PJ UNITED, INC., et al., )<br>)<br>Defendants. )<br>)<br>) | 7:13-cv-01275-LSC |

**MEMORANDUM OF OPINION AND ORDER**

The Court has before it a number of long-pending motions concerning discovery disputes between the parties as well as a motion for intervention. For the following reasons, Defendants' Motion to Compel Compliant Initial Disclosures (doc. 82) is due to be DENIED as MOOT; Plaintiffs' Motion for Sanctions and to Strike Attorney-Client Privileged Material from the Record (doc. 114) is due to be GRANTED in PART and DENIED in PART; Jack Clarke's Motion to Intervene for Arbitrator's Fee Owed by Defendants (doc. 190) is due to be DENIED; and Plaintiffs' Combined Motion to Compel Defendant to Produce Discovery and Memorandum in Support (doc. 113) is due to be DENIED as MOOT. The Court examines each motion in turn.

## 1. Defendants' Motion to Compel Compliant Initial Disclosures

Defendants argue in their Motion to Compel that Plaintiffs have failed to comply with Rule 26's initial disclosure requirements because Plaintiffs have "disclosed virtually nothing related to [their] claims." (Doc. 82 at 2.) Defendants first argue that Plaintiffs should be ordered to produce certain documents relating to their initial disclosures and that "Sullivan provided no documents with his disclosures." In response to Defendants' motion to compel Plaintiffs state that "Plaintiffs' attorney informed defense counsel that all of Plaintiff Sullivan's responsive documents have been produced."(Doc. 87 at 2.) Defendants indeed acknowledge receipt of certain documents from Plaintiffs and stated in their Reply that "if Sullivan will stipulate that he has no other documents that must be disclosed pursuant to Rule 26(a)(1)(A)(ii), Defendants will accept the stipulation as compliance with the rule." (Doc. 88 at 1-2.) The Court finds that the Plaintiffs' previously quoted statement did just that and the issue is now resolved by agreement of the parties.

Defendants next argues in their Motion to Compel that while "Rule 26(a)(1)(A)(iii) requires Sullivan to disclose both the computation and category of damages that he claims, his disclosures only describes the category of damages that Sullivan seeks." (Doc. 82 at 5.) In the time since Defendants' Motion has been

filed, Plaintiffs have provided Defendants and the Court a formula they seek to use to show damages as reflected in Plaintiffs' Experts Report. (*See* Transcript of November 16, 2017 Hearing at 38-42.) Defendants have made it abundantly clear that they disagree with Plaintiffs' reliance on reasonable estimation and representative testimony, but a Rule 26(a)(1)(A)(iii) inquiry is not the proper time for the Court to determine these multifaceted challenges to Plaintiffs' theory of damages. As Plaintiffs have provided Defendants with their damage calculation theory both on the record and in form of their expert report, this issue is now MOOT. *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) (Counterclaimant's repeated failure to disclose or supplement damages calculation under Rules 26(a) and (e) during discovery and *before trial* is grounds for exclusion of evidence for that theory of damages).

Defendants finally argue in their Motion that "the consenting Plaintiffs have disclosed nothing." However, during discovery the Court ordered every opt-in Plaintiff to complete and deliver to Defendants a discovery questionnaire. Any opt-in Plaintiff that did not comply with this Order has since been dismissed. Therefore, this specific argument as raised in Defendants' Motion to Compel is MOOT and Defendants' Motion to Compel (Doc. 82) is thus due to be DENIED as MOOT.

## 2. PLAINTIFFS' MOTION FOR SANCTIONS AND TO STRIKE

On June 1, 2017, Plaintiffs filed a Motion for Sanctions (doc. 114) arguing that Defendants' filing of an exhibit to one of their pleadings that Plaintiffs claim contains a letter protected by attorney-client privilege should lead to Defendants' sanctioning with a fine of "no less than $10,000, or such other sanction as this Court deems equitable and just." (Doc. 114 at 7.) Defendants oppose the Motion.

Plaintiffs state that Defendants gained control over attorney-client privileged information when one of the opt-in Plaintiffs, Christine Rose ("Plaintiff Rose"), brought to her workplace a letter that was sent to her from Plaintiffs' counsel. Plaintiff Rose wanted to ask her manager, Monica Cruthirds ("Cruthirds"), about information contained in the questionnaire attached to the letter. The letter conspicuously stated above the address line "ATTORNEY/CLIENT PRIVILEGED." Plaintiff Rose left those documents on Cruthirds' desk while she was performing job duties. She did not tell Cruthirds that she could open the letter, make a copy of it, or read it. Apparently, Cruthirds made a copy of that letter, and Defendants then relied on its contents in support of their "Motion to Dismiss Nonresponsive Consenting Plaintiffs." (*See* Doc. 110).

Defendants' Response, with an attached affidavit by Cruthirds, presents a different version of the facts alleged by Plaintiffs. Defendants state that Plaintiff

Rose asked Cruthirds for help in completing the discovery questionnaire because she was concerned she would be retaliated against for completing the questionnaire. Cruthirds did not open the letter outside of Plaintiff Rose's presence. Instead she discussed the contents of the letters with Plaintiff Rose and Michelle Richards, the local store manager. Cruthirds "recall[s] that Michelle scanned the papers to Patrick Lee, our market Operating Partner, to ask him what to do." (Doc. 119 Ex. 1 at 2.) Thus, under Cruthirds' version of the occurrence, she made a copy of the letter in the course of helping Plaintiff Rose, who was worried about retaliation for taking part in this action.

A court may impose sanctions for litigation misconduct under its inherent power. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991)). The court's inherent power derives from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Chambers*, 501 U.S. at 43 (quotation marks and citation omitted)). This power, however, "must be exercised with restraint and discretion." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Dismissal of a lawsuit, or entry of a default judgment,

is a "particularly severe sanction." *Id.* at 45. An assessment of attorney's fees for less severe conduct is also within a court's inherent power. *Id.* "The key to unlocking a court's inherent power is a finding of bad faith." *Eagle Hosp.*, 561 F.3d at 1306 (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). A party can demonstrate bad faith in this context by delaying or disrupting litigation or hampering enforcement of a court order. *Barnes*, 158 F.3d at 1214.

Here, the Court does not find that the Defendants' counsel attached the communication between Plaintiffs' counsel and Plaintiff Christine to its Motion to Dismiss in bad faith. According to Cruthirds who apparently was involved in the scanning of the letter with Michelle Richards, it appears that those parties believed that they had the consent of Plaintiff Rose to photocopy the letter and send it to their supervisor. Even under Plaintiffs' version of events, Plaintiff Rose discussed the contents of the letter with Cruthirds. Defendants' use of the letter under such circumstances does not warrant a finding of bad faith or imposition of monetary sanctions. Defendants clearly did not use good judgment in attaching the letter which stated "attorney/client privileged" to their Motion without consulting with Plaintiffs' counsel, even if they believed it had been voluntarily disclosed by Plaintiff Rose. But this failure in common sense does not warrant imposition of a

monetary penalty upon Defendants or their counsel, especially given the mundane, non-material contents of the information contained in that letter.

The Court will not award Plaintiffs damages against Defendants for Defendants' inclusion of a boilerplate, one-page letter sent by Plaintiffs' counsel to Plaintiff Rose. Plaintiffs' motion for sanctions is hereby DENIED and Plaintiffs' motion to Strike is hereby GRANTED to the extent that Exhibit 2 to Document 110 is hereby struck from the record.

### 3. MOTION TO INTERVENE FOR ARBITRATOR'S FEE OWED BY DEFENDANTS

Jack Clarke ("Clarke") additionally attempts to intervene under Federal Rule of Civil Procedure 24 for payment of certain fees for services he performed during the arbitration conducted between the parties. (*See* Docs. 21 & 22 (staying case during pendency of arbitration); Doc. 23 (dismissing case during pendency of arbitration); Doc. 33 (granting motion to reopen case).) Clarke was selected to arbitrate the parties' dispute and indeed claims to have provided considerable arbitration services. His services concluded when Defendants refused to continue to pay Clarke, despite his repeated requests, those of the American Arbitration Association, and from his legal counsel. Defendants allegedly remain indebted to him for $17,897.00 for arbitration services.

Clarke does not identify a specific subsection of Federal Rule of Civil Procedure 24 under which he seeks to intervene, and thus the Court reviews all possible methods of intervention under Rule 24. Subsections (a)(1) and (b)(1)(A) of Rule 24 respectively concern the "unconditional" and "conditional" right to intervene granted by federal statute. Clarke points to no federal statute allowing intervention for nonpayment of arbitration fees, so these subsections are not applicable in this case.

Subsection (a)(2) allows intervention as of right where a plaintiff claims an interest in the property or transaction that is the subject of the action such that his intervention is necessary to protect that interest. Clarke, who seeks payment for arbitration fees, claims no common interest in property or transaction with the parties, whose dispute concerns alleged violations of the FLSA. Subsection (b)(1)(B) in turn allows permissive intervention where the intervenor has a "claim or defense that shares with the main action a common question of law or fact." Again, Clarke appears to be asserting simple breach of contract arising from the arbitration agreement, which is not in dispute between the parties in this action.[1]

---

[1] The Court must assume that this is the basis for Clarke's claim, as he has not attached a pleading setting out his claims under which intervention is sought as required under Rule 24(c). While Defendants have argued that this in itself should bar Clarke's intervention, the Eleventh Circuit has held technical noncompliance with Rule 24(c) alone is not grounds for denial of a motion to intervene. *Loyd v. Alabama Dep't of Corr.*, 176 F.3d 1336, 1341 (11th Cir. 1999).

Thus, it appears to the Court that Rule 24 affords Clarke no ability to intervene as of right or permissively.

Before even considering whether the Court may otherwise allow Clarke's intervention under the alternate theories proposed by Plaintiffs and Clarke, the Court must first address subsection (b)(3) to Rule 24, which states that in deciding to permit a party's intervention the Court should consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Similarly, a court must consider whether intervention is timely. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). In considering whether a motion for intervention under Rule 24 is timely, a court should consider:

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;]
>
> 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;]
>
> 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and
>
> 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478-79 (11th Cir. 1993)).

Clarke terminated the arbitration on July 18, 2016, for Defendants' failure to pay the abritration fees, (doc. 56 at 4), but Clarke's motion to intervene was made on September 29, 2017. The length of time between when Clarke knew of his potential claim and his motion to intervene was over a year. The progress of this case and the parties would be prejudiced by the intervention of Clarke as the parties have already fully briefed summary judgment motions, and then re-briefed certain motions for Defendants' failure to follow this Court's Uniform Initial Order. Allowing intervention would delay trial yet again for an action that began four-and-a-half years ago.

It is difficult to analyze whether Clarke would be able to bring his claims against Defendants' in a separate action, as Clarke has not stated what claims he seeks to assert. It appears that Clarke alleges a breach-of-contract claim, which has a six-year statute of limitations in Alabama. *See McCall ex rel. McCall v. Household Fin. Corp.*, 122 So. 3d 832, 835 (Ala. Civ. App. 2013). Thus, he would not be precluded from bringing his claims in a separate suit. The Court is not aware of special circumstances militating against or for intervention in this action.

In sum, the factors the Court considers under Eleventh Circuit timeliness analysis and for undue prejudice all indicate that Clarke's Motion to Intervene be denied. Allowing intervention in this action after the parties have begun filing dispositive motions would only prolong and complicate an already complex and vexing action. Clarke had plenty of time to seek to intervene, but only did so after Defendants had already filed a Partial Motion for Summary Judgment. (*Compare* Doc. 188 *with* Doc. 190 (Defendants' Motion for Partial Summary Judgement filed four days before Clarke's Motion to Intervene).) There is thus clear prejudice to the existing parties if the Court allows intervention, and lack of prejudice to Clarke if the Court denies.

Plaintiffs and Clarke urge that the Court has the discretion to allow Clarke's intervention under Federal Rule of Civil Procedure 71[2] and the All Writs Act, 28 U.S.C. § 1651[3] as part of its inherent powers to enforce compliance with its Order staying the Action and Ordering Arbitration (doc. 22). Denying Clarke's intervention would supposedly frustrate the Court's original Order compelling the parties to arbitration. Plaintiffs and Clarke first point to *Local 11, Hotel v. Sands*, in which the court allowed an arbitrator to intervene for payment of arbitration fees

---

[2] Rule 71 provides "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Fed. R. Civ. P. 71.
[3] The All Writs Act provides "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

after the Court had ordered the parties to submit their claims to the arbitrator. No. 87 CIV. 2778 (RWS), 1992 WL 15154, at *1 (S.D.N.Y. Jan. 21, 1992). *Sands* relied on both Rule 71 and the All Writs Act for this authority as "[d]enying [the arbitrator] the opportunity to intervene in this action would frustrate this Court's original order referring the matter to him for arbitration and undermine the entire tradition in favor of arbitration." *Id.* at 2. However, *Sands* did not explicate on the bounds of this authority and relied generally on the principle that Rule 71 permits a court to use any procedure to enforce its own orders. Nor does *Sands* indicate that a court *must* permit intervention in such a situation.

Clarke and Plaintiffs additionally point to *Stewart v. State Farm Fire & Casualty Co.*, which under similar facts to *Sands* allowed the intervention of an arbitrator seeking payment of fees for a court-ordered arbitration. No. CIV. A. 96-CV-0441, 2001 WL 209915, at *1 (E.D. Pa. Feb. 26, 2001). *Stewart* chiefly relies on the reasoning of *Sands*'s interpretation of the All Writs Act and Rule 71 for its authority to permit an arbitrator to intervene in an action for payment of arbitration fees and provides no additionally authority or reasoning past its reliance on *Sands*.

Both *Sands* and *Stewart* both stand for the proposition that the Court *may*, but is not required to, permit intervention of an arbitrator seeking payment for arbitration fees. The Court has found no binding authority allowing Clarke to

intervene as of right, and thus the Court chooses to decline whatever discretionary authority it may have under Rule 71 and the All Writs Act to allow Clarke's intervention. As stated above, allowing intervention would unduly prolong this action and prejudice to the parties. Clark's Motion to Intervene is DENIED. The Court continues to retain its inherent authority to sanction the parties for any misconduct that has occurred during this action.

### 4. PLAINTIFFS' COMBINED MOTION TO COMPEL DEFENDANT TO PRODUCE DISCOVERY

Plaintiffs' Combined Motion to Compel Defendant to Produce Discovery and Memorandum in Support (doc. 113) is MOOT, as that motion asks the Court to order Defendants to produce the data contained in Check-out Reports that the Court has since ordered Papa John's International, Inc. to produce. (*See* Doc. 248 at 18-20 (Ordering non-party PJI to produce data contained in Checkout Reports needed by Plaintiffs).)

### 5. CONCLUSION

As stated above, Defendants' Motion to Compel Compliant Initial Disclosures (doc. 82) is DENIED as MOOT; Plaintiffs' Motion for Sanctions and to Strike Attorney-Client Privileged Material from the Record (doc. 114) is GRANTED in PART and DENIED in PART; Jack Clarke's Motion to Intervene for Arbitrator's Fee Owed by Defendants (doc. 190) is DENIED; and Plaintiffs'

Combined Motion to Compel Defendant to Produce Discovery and Memorandum in Support (doc. 113) is DENIED as MOOT.

**DONE** AND **ORDERED** ON FEBRUARY 12, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485